**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

ANTHONY ZAPPIN,

   Plaintiff,

v.             Case No. 3:20-cv-00209

SARAH JO HAMILTON,
DEBORAH SCALISE,
SCALISE & HAMILTON LLP,
SCALISE& HAMILTON P.C.     JURY TRIAL DEMANDED

   Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S CASE, STRIKE SERVICE AND, IN THE ALTERNATIVE TO STRIKE SCANDALOUS MATERIAL**

COMES NOW, the Defendants Sarah Jo Hamilton, Deborah Scalise, Scalise & Hamilton LLP, Scalise & Hamilton P.C., by and through their undersigned counsel pursuant to Federal Rules of Civil Procedure 4(m), 12(b)(2), 12(b)(4), 12(b)(5), and 12(f) and respectfully submits this Memorandum of Law in Support of the Defendants Motion to Dismiss Plaintiff's Case, Strike Service and, in the Alternative to Strike Scandalous Material on the following grounds: (1) the Court lacks personal jurisdiction over defendants; (2) Plaintiff failed to timely serve the Complaint; and (3) language from Complaint should be stricken as immaterial, impertinent and scandalous.

**I.**  **Background**

This is a case in which the Plaintiff is alleging a malpractice action arising from the Defendant attorneys and their law firms' actions representing the Plaintiff in an attorney disciplinary proceeding brought against Plaintiff by the Attorney Grievance Committee for the First Judicial Department in New York, New York. Compl. 8¶

Defendants have no connection to West Virginia. Sarah Jo Hamilton and Deborah Scalise are permanent residents of the State of New York, where they are also licensed to practice law.

1

Ex. 1 and Ex. 2. They have never practiced law in West Virginia and are not licensed to do so. *Id.* Scalise & Hamilton LLP and Scalise & Hamilton P.C. are New York entities, licensed in New York, with their principle place of business in New York and are exclusively practicing in New York. *Id.* Their attorneys have never appeared in West Virginia courts *pro hac vice. Id.* Scalise & Hamilton LLP and Scalise & Hamilton P.C. have not been registered, authorized, or licensed to do business in West Virginia; have not maintained an office, place of business, post office box, or telephone listing in West Virginia; have not had real estate, bank accounts, or other property interests in West Virginia; have not conducted any regular or ongoing advertising, solicitation, marketing, or other sales promotions directed toward residents of West Virginia; and have not had a registered agent for service of process in West Virginia. *Id.*

Plaintiff filed the instant complaint against Defendants on March 23, 2020, in the Southern District of West Virginia. Plaintiff alleges that the defendants were "negligent and, at numerous times, deliberately harmful and injurious to Plaintiff's defense in the attorney disciplinary matter" in New York by the New York Attorney Grievance Committee. Compl. ¶ 8. Plaintiff alleges claims of legal malpractice which he asserts caused him to suffer injury to his West Virginia and District of Columbia law licenses. ¶¶ 74, 78. He also alleges a breach of contract claim related to the same allegations of negligent for the New York legal services. Compl. ¶ 79-81. Plaintiff alleges that venue is proper in this Judicial District "because a substantial part of the events and/or omissions giving rise to the claims in this action occurred in this Judicial District." Compl. ¶ 7. The Plaintiff does not allege what particular events and/or omissions occurred in this Judicial District. In fact, to the contrary, the events alleged in the Complaint occurred in New York. *See generally* Compl.

The Summons and Complaint were not served on Defendants until October 6, 2020, well outside the ninety (90) days the rules require to effectuate service. Prior to receiving the Summons in October, Defendants are unaware of any attempts to facilitate service or even of the Plaintiff requesting of any of them to accept service. Ex. 1 and Ex. 2.

Finally, the plaintiff's Complaint is replete with immaterial, impertinent, and scandalous matters. Plaintiff details a litigation history levying defamatory and unfounded claims against the NY Judicial Officers of judicial corruption, mafia ties, violence, criminal conduct, plotting to destroy the credibility and legal career of Plaintiff, and claims of intimidation and deceit. Comp. ¶¶ 17, 20, 21, 24-26, 28, 34, 37, 40, 47, 54, 58, and 61-65.

The Defendants now timely move to dismiss due to lack of jurisdiction, to strike service as untimely, and to strike immaterial, impertinent, and scandalous portions of the Complaint.

## II.   Argument

### A.   DISMISSAL FOR LACK OF JURISDICTION

Plaintiff bears the burden of establishing personal jurisdiction over Defendants. *Universal Leather, LLC v. Koro* AR, S.A., 773 F.3d 553, 558 (4th Cir. 2014). To meet that burden, Plaintiff must show that "jurisdiction is authorized by the long-arm statute of the state in which the district court sits" and that the "application of the relevant long-arm statute is consistent with the Due Process Clause of the Fourteenth Amendment." *Id.*; *see also ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 391 (4th Cir. 2012). In West Virginia, the two inquiries are synthesized into one, "[b]ecause the West Virginia long-arm statute is coextensive with the full reach of due process." *Owens-Illinois, Inc. v. Rapid Am. Corp.* (*In re Celotex Corp.*), 124 F.3d 619, 627–28 (4th Cir. 1997) ("[T]he statutory inquiry necessarily merges with the Constitutional inquiry."). There are two types of personal jurisdiction: general jurisdiction and specific jurisdiction. *Bristol-Myers*

*Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017). Here, Plaintiff cannot carry his burden of establishing either general or specific jurisdiction. Therefore, the Court cannot exercise personal jurisdiction over Defendants in this case consistent with the Constitution, and the Complaint must be dismissed.

i.      No general jurisdiction in West Virginia.

Defendants are subject to a court's general or "all-purpose" jurisdiction where the defendants are "at home" in the forum state. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014). The critical question in assessing general jurisdiction is whether the defendants' "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)). The consequences of finding general jurisdiction are stark—a defendant will be subject to suit in that state for any and all claims, including claims that do not implicate a defendant's activities there. *Id.* As a result, "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction." *Id.* at 760.

For an individual defendant, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Bauman*, 134 S. Ct. at 760. An individual's domicile is the state where the individual resides with the intent to remain there and make it his home. *Burgess v. Asplundh Tree Expert Co.*, No. 1:05-0866, 2005 WL 8159164, at *2 (S.D.W. Va. Dec. 12, 2005). For a corporation, the "paradig[m] . . . bases for jurisdiction" are "the place of incorporation and the principal place of business," because they are "unique," "easily ascertainable," and "afford plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims." *Bauman*, 134 S. Ct. at 760.

4

Sarah Jo Hamilton and Deborah Scalise are citizens and permanent residents of the State of New York., Comp. ¶¶2 and 3. Ex. 1 and 2. They practice law in the State of New York. *Id.* They are not licensed to practice law in the State of West Virginia and have never practiced law in the State of West Virginia. *Id.* As such, their state of domicile, where they are "at home," is New York State, and they are simply not subject to general jurisdiction in West Virginia courts.

Scalise & Hamilton LLP and Scalise & Hamilton, P.C. are incorporated in the State of New York with their principal place of business in New York State, so West Virginia cannot qualify as a "paradigm" site for general jurisdiction for either of them. Ex. 1 and Ex. 2.

There is no other basis for asserting general jurisdiction over Scalise & Hamilton. While the *Bauman* Court did not hold that a corporation was subject to general jurisdiction only in its state of incorporation and principal place of business, the Court did reiterate that a corporation must be "at home" in a state to trigger general jurisdiction. *Bauman*, 134 S. Ct. at 762. The Court further clarified that a corporation is not "at home" in "every State in which [it] engages in a substantial, continuous, and systematic course of business." *Id.* at 761-62. It thus remains "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or the principal place of business." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014).

Here, the firms do not generally engage in business activity in West Virginia; they are not registered to do business in West Virginia; and they do not own property or maintain a place of business in West Virginia. Ex. 1 and Ex. 2. They also do not regularly practice law in West Virginia. *Id.*

Because none of the Defendants are "at home" in West Virginia, the Defendants are not subject to general jurisdiction in the state.

     ii.  Defendants are not subject to specific jurisdiction in West Virginia.

  Plaintiff likewise cannot establish specific jurisdiction over Defendants. The individual Defendants have no contacts with West Virginia. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)); see also *Cmty. Tr. Bank, Inc. v. Severson*, No. 3:14-7168, 2014 WL 3700482, at *5 (S.D.W. Va. July 17, 2014) ("The relevant inquiry is what action Defendant himself took to purposefully avail himself of the privilege of conducting activities in West Virginia."). Critically, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden*, 134 S. Ct. at 1121. Contacts "between the plaintiff (or third parties) and the forum State" do not suffice. *Id.* at 1122. "[T]he plaintiff cannot be the only link between the defendant and the forum." *Id.*; *Cmty. Tr. Bank, Inc.*, 2014 WL 3700482, at *5 ("The unilateral action of a third party . . . cannot lead to jurisdiction over Defendant.").

  The Fourth Circuit applies a three-part test to determine whether a "defendant's qualifying contacts with the forum state . . . constitute the basis for the suit." *Universal Leather*, 773 F.3d at 559. The relevant factors are: "(1) the extent to which the defendant purposely availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims [arose] out of those activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable." *Id.* (quoting *Tire Eng'g v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 302 (4th Cir. 2012)). The "touchstone" of the analysis is whether the defendant "engaged in some activity purposefully directed toward the forum state." *Celotex*, 124 F.3d at 629 (quoting *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 945 (4th Cir. 1994).

Plaintiff cannot establish the prerequisites for specific jurisdiction here. Most critically, Defendants have not "purposefully availed [themselves] of the privilege of conducting business" in West Virginia. *Universal Leather*, 773 F.3d at 560. Moreover, Defendants do not have any "offices or agents" in the forum state. *Id.* They are not licensed to practice law in West Virginia and have never practiced here. Ex. 1 and Ex. 2.

Moreover, the Complaint contains no allegations whatsoever that indicate any specific contacts Defendants had with West Virginia, let alone contacts out of which Plaintiff's claims arise. Rather, Plaintiff only vaguely alleges that "a substantial part of the events and/or omissions giving rise to the claims in this action occurred in this Judicial District." Compl. ¶ 7. And this broad nebulous assertion is simply not the case, as is clear from the remainder of the allegations in the Complaint. *See generally* Compl. All facts relevant to this action occurred in the State of New York. *See generally* Compl. Plaintiff's claims of legal malpractice and breach of contract arise out of Defendants' representation of Plaintiff in a New York attorney disciplinary matter. The legal services provided by the Defendants to Plaintiff were exclusively in New York State. Compl. ¶¶ 2, 3, 4, 5 and 8. Ex. 1 and Ex. 2. Per Plaintiff's allegations, the attorney disciplinary matter arose out of a divorce and child custody action Plaintiff filed against his ex-wife in the State of New York. Compl. ¶ 9. The disciplinary matter related to Plaintiff's conduct in New York litigation governed by New York law. Ex. 1 and Ex. 2. *See generally* Compl. Defendants' lack of any activities in West Virginia related to this matter cannot give rise to specific jurisdiction. Plaintiff's current residence in the forum state cannot "drive the jurisdictional analysis." *Walden*, 134 S. Ct. at 1125. The Due Process Clause therefore prohibits this Court from exercising jurisdiction here.

B.     DISMISSAL DUE TO UNTIMELY SERVICE OF PROCESS

Plaintiff's efforts to serve Defendants with copies of the Complaint and Summons do not comport with the requirements of Rule 4 of the Federal Rules of Civil Procedure, and Plaintiff has not shown good cause for his failure to effectuate timely and proper service within the ninety-day period prescribed by the Federal Rules of Civil Procedure. Pursuant to Rule 4 of the Federal Rules of Civil Procedure, a plaintiff must properly and timely serve a defendant with both a summons and a copy of the complaint or request that the defendant waive service, within the time requirements set forth under Rule 4(m). Fed. R. Civ. P. 4(c)(1); Rule 4(d). Rule 4(m), in turn, requires that service be effectuated within ninety (90) days after a complaint is filed, unless the Court provides an extension for good cause shown by the plaintiff. Fed. R. Civ. P. 4(m). The Federal Rules provide a number of options for how service may be effectuated, including by following the state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made. Rule 4(e)(1).

If a plaintiff has not completed service on a defendant within ninety days of filing a complaint, the court must determine whether the plaintiff has shown good cause for failing to timely effect service. The Fourth Circuit has explained that "good cause" in the context of Rule 4(m) "requires some showing of diligence on the part of the plaintiffs ... [and] generally exists when the failure of service is due to external factors, such as the defendant's intentional evasion of service." *Attkisson v. Holder*, 925 F.3d 606, 627 (4th Cir. 2019). A "plaintiff bears the burden ... of demonstrating good cause for any delay." *Iskander v. Baltimore Cty., Md.*, 2011 WL 4632504, at *1 (D. Md. Oct. 3, 2011).

Courts frequently look to a multitude of factors to guide their determination of whether a plaintiff has shown good cause, including whether "(1) the delay in service was outside the

plaintiff's control, (2) the defendant was evasive, (3) the plaintiff acted diligently or made reasonable efforts, (4) the plaintiff is pro se or in forma pauperis, (5) the defendant will be prejudiced, or (6) the plaintiff asked for an extension of time under Rule 6(b)(1)(A)." *Scott v. Maryland State Dep't of Labor*, 673 F. App'x 299, 306 (4th Cir. 2016) (citations omitted). "What constitutes 'good cause' for purposes of Rule 4(m) 'necessarily is determined on a case-by-case basis within the discretion of the district court.'" *Collins v. Thornton*, 782 F. App'x 264, 267 (4th Cir. 2019) (quoting *Scott*, 673 F. App'x at 306). A court's dismissal of a complaint for untimely or improper service is not considered an abuse of discretion. *See Hansen v. Fairfax Cnty. School Bd.*, 405 Fed. App'x 793, 794 (4th Cir. 2010).

Recently, several courts have ruled that the ongoing COVID-19 pandemic does not constitute good cause for failing to timely effect service where the plaintiff failed to prosecute his case in a diligent manner. *See e.g.*, *Blaylock v. United Parcel Serv., Inc.*, No. 1:20-00156, 2020 WL 3979667, at *1 (S.D.W. Va. July 14, 2020) (finding that although COVID-19 adversely affected normal operations "failure to effectuate timely service due to inadvertence, without reasonable efforts to find and correct such mistake, does not constitute good cause"), *Crosby v. Little*, No. 5:20-cv-5046, 2020 WL 5657890, at *2 (W.D. Ark. Sept. 23, 2020) (finding that the plaintiff's failure to effect timely service of process could not be attributed solely to the COVID-19 pandemic and granting the defendants' motions to dismiss), *Johnson v. Bell*, No. 7:20-cv-4 (HL), 2020 WL 3578581, at *2 (M.D. Ga. July 1, 2020) (finding that plaintiffs had not demonstrated good cause for failure to perfect service of process and that no other circumstances warrant the extension of time for service because counsel for plaintiff had not explained the delay in arranging service or how the COVID-19 pandemic had impeded his efforts to serve defendants).

In *Crosby v. Little*, counsel for plaintiff operated his law practice out of a public library and relied on use of the library's computers, fax machine, and other resources. *Crosby*, 2020 WL 5657890, at *2.  After the complaint was filed, the library was temporarily closed due to the COVID-19 pandemic and then subsequently reopened under guidelines that did not permit the type of use that plaintiff's counsel previously made of the facility.  *Id.*  In order to conduct his law practice at his home, plaintiff's counsel needed to acquire a computer and other equipment, which he was unable to do because of financial constraints.  *Id.*  Thus, the complications caused by the COVID-19 pandemic coupled with the inability to obtain essential equipment to continue practicing law resulted in plaintiff's counsel not attempting service of process on the defendants until one hundred twenty-seven (127) days had passed since the complaint was filed.  *Id.* at *1-2.

The *Crosby* court was not persuaded by plaintiff's explanations and noted that his failure to effect timely service of process could not be attributed solely to the COVID-19 pandemic.  *Id.* at *2.  Any change in circumstances caused by the COVID-19 pandemic did not excuse the fact that counsel for plaintiff failed to make alternative arrangements in a timely manner to ensure that he could continue to represent his client adequately and that he skirted his obligation of diligence to prevent neglect of his client's case.  *Id.*  Therefore, the court concluded that the plaintiff had failed to show good cause requiring an extension of the deadline for service of process pursuant to Rule 4(m) and granted the defendants' Rule 12(b)(5) motions to dismiss for insufficient service of process.  *Id.* at *2-3.

Whatever the minimum requirement for good cause may be, Plaintiff has failed to show it. Here, the Complaint was filed on March 23, 2020.  (Dkt. No. 2).  June 21, 2020 marked ninety (90) days in which the Complaint had to be served.  On September 10, 2020, the Court entered a Show Cause Order directing Plaintiff to show good cause for the failure to effectuate service of

the Complaint on Defendants and to provide the Court with a proposed appropriate period of time in which it might take him to properly effectuate service on Defendants on or before September 30, 2020. (Dkt. No. 11). On September 30, 2020, Plaintiff filed his Response to the Show Cause Order and proceeded to blame the ongoing COVID-19 pandemic and his personal financial constraints for the closure of the New York State courts and his inability to locate and hire a process server to effectively carry out service on Defendants. (Dkt. No. 12). On October 2, 2020, this Court entered an Order preliminarily accepting Plaintiff's explanation as the Defendants were not yet afforded a chance to repeat Plaintiff's explanation. This court extended the deadline for him to effectuate service on Defendants to October 8, 2020. (Dkt. No. 13). Defendants finally were served with the Complaint and Summons on October 6, 2020 — one hundred seven (107) days over the deadline imposed by Rule 4(m) and over six months since this lawsuit was filed.

The Defendants respectfully submit that the Plaintiff's Response to the Court's Show Cause Order is tantamount to a sham as it offers nothing more than empty excuses for the delay in service on Defendants and such service should be stricken, and the case dismissed for failure to timely serve. Plaintiff behaved the exact opposite of diligently in trying to effectuate service on Defendants—simply put, he had not tried. Defendants have not intentionally evaded service. If Plaintiff was overwhelmed, as Plaintiff represents in his Response to the Show Cause Order, he was free at any time to file an extension of time to serve process. Plaintiff did not seek the Court's assistance. Instead, he chose to do nothing.

Further, Plaintiff failed to avail himself of the New York Rules of Civil Procedure which allow a plaintiff to serve a summons and complaint on a defendant by first class mail, postage prepaid. N.Y. R. Civ. P. 312-a. Here, Defendants are attorneys who operate and maintain a law practice outside of New York City in Scarsdale, NY. Throughout the COVID-19 pandemic,

Defendant, Deborah Scalise, was regularly in the office checking their mail and continued to work. Ex 1 and 2. While Defendants appreciate any difficulties that Plaintiff has recently experienced, he could have easily mailed copies of the Complaint and Summons to Defendants' law office via first class mail — pandemic or no pandemic.  Plaintiff is using the COVID-19 pandemic to cover up the fact that he made no effort to timely effectuate service on Defendants and should not be rewarded by this Court for his dilatoriness.

Plaintiff also alluded to costs and money being an issue.  Again, the option existed to send the Complaint and Summons by First Class and/or Certified Mail, which represents a very minimum expense.  In addition, Rule 4(d)(2), allows for a cost shifting mechanism where the defendants  bear the cost of making service and specifically maintains that when the defendant is requested to waive formalities of services, without good cause, the court must impose on the defendant expenses later incurred in making service and reasonable expenses and attorney fees. Fed. R. Civ. P. 4(d)(2) and subsections (A) & (B).  But again, here, before October 6, 2020, no request was made. Ex. 1 and 2.

Therefore, Plaintiff has not demonstrated good cause for the delay in service and the Complaint should be dismissed for insufficient service of process.

### C.   STRIKING IMMERTERIAL, IMPERTANT, AND SCANDALOUS MATTERS

The Complaint makes allegations of legal malpractice and breach of contract against Defendants for their allegedly negligent representation resulting in damages to Plaintiff's West Virginia and District of Columbia law licenses. *See id.* at ¶¶ 72–81.  However, the Complaint presents extensive and unnecessary background information on the underlying matrimonial litigation for custody of Plaintiff's child, the New York Court of Claims personal injury action Plaintiff brought against Justice Kaplan and her personally assigned court officer, Jeffrey Katz

12

("Officer Katz"), and Plaintiff's divorce proceedings. *See id.* at ¶¶ 9-43. Entangled within Plaintiff's detailed litigation history are the at issue unfounded claims against the NY Judicial Officers of judicial corruption, mafia ties, violence, criminal conduct, plotting to destroy the credibility and legal career of Plaintiff, and claims of intimidation and deceit by Defendants. *See id.* at ¶¶ 17, 20, 21, 24-26, 28, 34, 37, 40, 47, 54, 58, and 61-65.

Pursuant to Rule 12(f), this Court "'may strike from a pleading an insufficient defense or any redundant, immaterial, or scandalous matter,' acting either 'on its own' or 'on motion made by a party.'" *Devers v. City of Huntington*, Civil Acton No. 3:18-1452, 2019 WL 4281936, at *2 (S.D.W. Va. Sept. 10, 2019) (quoting Fed. R. Civ. P. 12(f)). "This standard affords district courts significant discretion in determining whether to strike certain material from pleadings." *Devers*, 2019 WL 4281936, at *2 (citing *Scherer v. Steel Creek Prop. Owners Ass'n*, No. 1:13cv121, 2014 WL 813824, at *1 (W.D.N.C. Mar. 3, 2014)). Rule 12(f) motions should be denied "unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action." *Devers*, 2019 WL 4281936, at *1 (quoting *Bailey v. Fairfax Cty.*, No. 1:10-cv-1021, 2010 WL 5300874, at *4 (E.D. Va. Dec. 21, 2010); *see also* 5C Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 1382 (3d ed. 2004).

One "function of the motion [to strike] is to avoid the expenditure of time and money that would arise from litigating spurious issues . . . ." 2 James Wm. Moore et al., *Moore's Fed. Prac.* § 12.37 (3d ed. 2010) (citing *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010)). "The Rule 12(f) motion to strike standard places a "'sizable burden on the movant.'" *Dickens v. Aetna Life Ins. Co.*, Civil Action No. 2:10-cv-00088, 2010 WL 3852346, at *1 (quoting *Clark v. Milam*, 152 F.R.D. 66, 70 (S.D.W. Va. 1993)). In spite of the general reluctance to grant

motions to strike, "allegations may be stricken if they have no real bearing on the case, will likely prejudice the movant, or where they have criminal overtones." *G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521, 555 (S.D.N.Y. 2002).  Moreover, "the disfavored character of Rule 12(f) is relaxed somewhat in the context of scandalous allegations" like those in the Objectionable Paragraphs.  5C Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 1382 (3d ed. 2004); *see Wine Mkts. Int'l v. Bass*, 177 F.R.D. 128, 133 (E.D.N.Y. 1998) ("Motions to strike are not generally favored, except in relation to scandalous matters.").

      i.     The Objectionable Paragraphs are not relevant, impertinent, and immaterial.

The Objectionable Paragraphs should be stricken from the Complaint because they are impertinent and immaterial.  An allegation is "impertinent" or "immaterial" when it is not relevant to the issues involved in the action.  *See Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc.,* 227 Fed. Appx. 239, 247 (4th Cir. 2007) (affirming district court's decision to grant motion to strike portions of paragraphs in complaint where district court "did not consider the dispute information to be probative"); *Morse v. Weingarten*, 777 F. Supp. 312, 319 (S.D.N.Y. 1991) (striking references to defendant's criminal conviction and income level as immaterial and impertinent because neither "bears remotely on the merits of this case").  "Immaterial" for purposes of Rule 12(f) is "that which has no essential or important relationship to the claim for relief or the defenses pleaded, or a statement of unnecessary particulars in connection with and descriptive of that which is material."  Wright & Miller, *Fed. Prac. & Proc. Civ. 3d* § 1382, 458–60.  "Impertinent" matters consist of "statements that do not pertain, and are not necessary, to the issues in question.  Thus, there is considerable overlap between the concepts of 'impertinent' and 'immaterial' matter."  *Id.* at 464.

14

Even if true, the Objectionable Paragraphs are completely not relevant to Plaintiff's claims. The alleged conduct of Defendants and the NY Judicial Officers do not relate in any way to Defendants' conduct in representing Plaintiff that is at issue in this case. The Objectionable Paragraphs speak to, for example, the "crooked and undoubtedly biased [New York State] family court system," describes Justices Kaplan and Cooper as "corrupt judicial actors," and notes that Justice Kaplan's father allegedly was "a drug dealer and hitman for a notable crime family in New York City." *See* Compl. at ¶¶ 17, 20, and 25. Any such allegations are immaterial to Plaintiff's claims. Plaintiff's allegations that disparage the honor and integrity of Defendants, the New York State Court system, and of the NY Judicial Officers have nothing to do with Defendants' allegedly negligent conduct in representing Plaintiff in the subject disciplinary proceedings.

Indefensible and wholly inappropriate allegations like those contained in the Objectionable Paragraphs have no place in filings in this Court and are appropriately subject to a motion to strike under Rule 12(f). *See In re "Agent Orange" Prod. Liab. Litig.*, 475 F. Supp. 928, 936 (E.D.N.Y. 1979) ( striking 425 paragraphs relating to the corporate history of the defendants because they are "unnecessary, would be burdensome to answer, and would unduly prejudice defendants"); *see also Healing v. Jones*, 174 F. Supp. 211, 220 (D. Az. 1959) ( finding allegations prior to critical date in case "more extensive . . . than is necessary"). Thus, this Court should strike the not relevant Objectionable Paragraphs as impertinent and immaterial.

ii.     The Objectionable Paragraphs are scandalous.

The Objectionable Paragraphs should be stricken from the Complaint because they are scandalous. The word "scandalous" in Rule 12(f) "generally refers to any allegations that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." *Pigford v. Veneman*, 215 F.R.D. 2, 4 (D.D.C.

15

2003) (granting defendant's motion to strike statement as scandalous that counsel for defendant exhibited "racist attitude") (internal citations omitted). "Scandalous" matter "includes allegations that cast a cruelly derogatory light on a party to other persons." *Devers*, 2019 WL 4281936, at *2 (internal citations omitted). Scandalous allegations that improperly cast a derogatory light on a party will be stricken, particularly if they are immaterial or not relevant or "may cause the objecting party prejudice." *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992). Indeed, where a plaintiff uses "inflammatory language that is not in keeping with the spirit of notice pleading . . . and that is prejudicial to [the defendant's] reputation, [the defendant's] motion to strike will be granted" even if the prior incident is potentially relevant. *Schultz v. Braga*, 290 F. Supp. 2d 637, 655 (D. Md. 2003).

In *Pigford v. Veneman*, class counsel for the plaintiff stated in his response to the defendant's response to the motion to reopen all late claims due to mail delays that the defendant's lead counsel had exhibited the "same racist attitude" throughout the litigation as "U.S.D.A. workers who systematically destroyed the farms of thousands of farmers, simply because they were black." *Pigford*, 215 F.R.D. at 3. Pursuant to Rule 12(f), the defendant moved to strike the plaintiff's statement as scandalous. *Id.* The court agreed with the defendant, finding that the plaintiff's "charges of racism are plainly scandalous within the meaning of the Rule, in that they 'improperly cast a derogatory light' on a dedicated government attorney who has done his best to navigate the deep and murky waters of this litigation." *Id.* at 4 (internal citations omitted). The court granted the defendant's motion to strike because the plaintiff's accusations of racism were unsupported by facts or evidence, constituted a form of harassment, and were clearly scandalous. *Id.* at 4.

16

Like the allegations made by the plaintiff in *Pigford*, Plaintiff's allegations in the Objectionable Paragraphs are not supported by any facts or evidence, constitute a form of harassment, and are clearly scandalous. In the Objectionable Paragraphs, Plaintiff paints a picture of a judicial system teeming with corruption and of a conspiracy to publicly disgrace and disparage Plaintiff. *See* Compl. at ¶¶ 17, 20, 21, 24, and 28. Plaintiff alleges that the NY Judicial Actors engaged in conduct that is tantamount to criminal conduct by claiming that Justice Kaplan and Justice Cooper routinely fabricated court findings, allowed Plaintiff's opposition to engage in "mountains of misconduct," and violated New York State sealing laws by disseminating statutorily sealed documents to the tabloid press prior to trial. *See id.* at ¶¶ 24, 34, 37, 40, 47, 54, 58, and 62-63. Plaintiff is clearly lashing out against a court system that did not rule in his favor out of frustration.

According to Plaintiff, Justice Kaplan's father was allegedly a well-known drug dealer and hitman with connections to the mafia. *See id.* at ¶ 25. Officer Katz allegedly "roughed up" Plaintiff following a hearing before Justice Kaplan that resulted in injuries that required treatment at a New York hospital. *See id.* at ¶ 26. By denying that anything took place, Justice Kaplan and Officer Kaplan allegedly exhibited their "true mafioso form." *Id.*

Plaintiff also alleges unhappiness with the opposition papers prepared on his behalf by Defendants that stems from Defendants strong-arming him into accepting their version of the final product against his wishes and that Hamilton lied to Plaintiff about her reasons for withdrawing as his counsel, which resulted in Plaintiff exhausting over $50,000 to find new counsel. *See id.* at ¶ 61-65. Due to their scandalous nature, these allegations have no legitimate place in the Complaint and should be stricken. *See G-I Holdings*, 238 F. Supp. 2d at 555-56.

iii.     Denial of this Motion to Strike would prejudice Defendants.

Denial of this Motion to Strike would prejudice Defendants in several ways.  First, the scandalous and impertinent nature of the allegations in the Objectionable Paragraphs provides a platform for negative publicity relating to this litigation that will harm the reputation of Defendants and the NY Judicial Officers.    Second, both that publicity and the Objectionable Paragraphs themselves have the potential to influence jury pool members.  *See id.* (striking background allegations of "extortionate threats" relating to lobbying efforts where background has "no real bearing on the case" and allegations were "amorphous, unspecific, and cannot be defended against" and would harm movant "in the public eye and could influence prospective jury members").   Third, responding to the Objectionable Paragraphs will subject Defendants to an undue discovery and litigation burden.

Permitting Plaintiff to litigate allegations of corruption and misconduct against the NY Judicial Officers that occurred over five years ago, which have nothing to do with the conduct of Defendants during their representation of Plaintiff, which Plaintiff contends is at issue here, would serve no purpose and would place an unwarranted and excessive burden on Defendants. Accordingly, the Court should strike the Objectionable Paragraphs.  *See U.S. v. Dico, Inc.,* 189 F.R.D. 536, 541 (S.D. Iowa 1999) ("[A] motion to strike should be granted if it may have the effect of making the trial of the action less complicated, or [it] may have the effect of otherwise streamlining the ultimate resolution of the action.") (quotations and citations omitted); *Int'l Commodities Corp. v. Int'l Ore & Fertilizer Corp.*, 30 F.R.D. 58, 60 (S.D.N.Y. 1961) (granting motion to strike; "The paragraphs attacked are so interwoven with the immaterial, the remote, and the redundant that the disengagement of any relevant or material areas of appropriate allegation is virtually impossible.").

18

III.   **Conclusion**

It is clear that none of the elements for general or specific jurisdiction can be established in this action.  Defendants are not "at home" in West Virginia and this case does not arise out of any contacts between Defendants in this forum.  None of the allegations in Plaintiff's Complaint explain how this court could exercise jurisdiction over Defendants.  As such, the Court should dismiss Plaintiff's Complaint for lack of personal jurisdiction.

In addition, Plaintiff failed to timely serve the Complaint within the ninety (90) days allotted under Federal Rule of Civil Procedure 4(m) and provided a sham excuse for the delay and as such service should be stricken and the case be dismissed for failure to timely serve.

In the alternative, Plaintiff's Complaint is replete with particularly scandalous language that in addition is immaterial and impertinent and as such paragraphs 17, 20, 21, 24-26, 28, 34, 37, 40, 47, 54, 58, and 61-65 of the Complaint should be stricken.

WHEREFORE, Defendants, Sarah Jo Hamilton, Deborah Scalise, Scalise & Hamilton LLP, and Scalise & Hamilton P.C. respectfully request that this Court enter an order dismissing with prejudice Plaintiff's Complaint, along with any other relief the Court may deem just and proper.

Respectfully Submitted,

SARAH   JO   HAMILTON,   DEBORAH
SCALISE, SCALISE & HAMILTON LLP,
SCALISE & HAMILTON P.C.,

By counsel,

/s/ Robert C. James, Esq.
Robert C. James, Esq. (WV #7651)
FLAHERTY SENSABAUGH BONASSO PLLC
1225 Market Street/P.O. Box 6545
Wheeling, WV  26003
T: (304) 230-6600/F: (304) 230-6610
rjames@flahertylegal.com

and

William J. Aubel, Esq. (WVSB # 13097)
FLAHERTY SENSABAUGH BONASSO PLLC
200 Capitol Street/P.O. Box 3843
Charleston, WV 25338
T: (304) 345-0200/F: (304) 345-0260
waubel@flahertylegal.com

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

ANTHONY ZAPPIN,

      Plaintiff,

v.                                         Case No. 3:20-cv-00209

SARAH JO HAMILTON,
DEBORAH SCALISE,
SCALISE & HAMILTON LLP,
SCALISE& HAMILTON P.C.                    JURY TRIAL DEMANDED

      Defendants.

### CERTIFICATE OF SERVICE

I, Robert C. James, Esq., counsel for Defendants, Sarah Jo Hamilton, Deborah Scalise,

Scalise & Hamilton LLPS, Scalise & Hamilton P.O. do hereby certify that on this 26th day of

October, 2020, a true and correct copy of the foregoing *Memorandum in Support of Motion to*

*Dismiss Plaintiff's Case, Strike Service and, in the Alternative to Strike Scandalous Material*

was served upon the following counsel of record via the Court's CM/ECF System:

> Anthony Zappin
> 1827 Washington Blvd.
> Huntington, WV  25701
> *Plaintiff, Pro Se*

/s/ Robert C. James, Esq.
Robert C. James, Esq. (WV #7651)
FLAHERTY SENSABAUGH BONASSO PLLC
1225 Market Street/P.O. Box 6545
Wheeling, WV  26003
T: (304) 230-6600/F: (304) 230-6610
rjames@flahertylegal.com

and

William J. Aubel, Esq. (WVSB # 13097)
FLAHERTY SENSABAUGH BONASSO PLLC
200 Capitol Street/P.O. Box 3843
Charleston, WV 25338
T: (304) 345-0200/F: (304) 345-0260
waubel@flahertylegal.com

# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

ANTHONY ZAPPIN,

       Plaintiff,

v.                                                                  Case No. 3:20-cv-00209

SARAH JO HAMILTON,
DEBORAH SCALISE,
SCALISE & HAMILTON LLP,
SCALISE & HAMILTON P.C.                          JURY TRIAL DEMANDED

       Defendants.

## AFFIDAVIT OF DEBORAH A. SCALISE

STATE OF NEW YORK
COUNTY OF WESTCHESTER, TO-WIT:

I, Deborah A. Scalise, being first duly sworn state and affirm as follows:

1. I am over the age of 18 and have personal knowledge of the facts stated in this affidavit and believe the same to be true and correct.

2. I am a citizen and permanent resident of the State of New York.

3. I am a New York attorney and am licensed to practice law in the State of New York.

4. I am not licensed to practice in the state of West Virginia and have never practiced in the State of West Virginia, including making an application for admission *Pro Hac Vice*.

5. At all relevant times, I practiced with the firm of Scalise & Hamilton, known as Scalise & Hamilton LLP and/or its successor, Scalise & Hamilton P.C.

6. From August 1, 2007to present, I have been a partner   of Scalise & Hamilton LLP and/or the owner of its successor,  Scalise & Hamilton P.C.

7. On January 19, 2016, Sarah Jo Hamilton, Esq., and I, along with our firm Scalise & Hamilton LLP  undertook to represent Anthony Zappin in a disciplinary matter brought against him by the Attorney Grievance Committee for the First Judicial Department in the State of New York.

1

8. When we undertook representation of Mr. Zappin, he filled out and signed a Scalise & Hamilton Client Information form, indicating that he resided in the State of New York at 194 West 10th Street, Apt. D1, New York, N.Y. 10014.

9. Less than ten months later, on October 7, 2016, we withdrew from representing Mr. Zappin in the disciplinary matter.  J. Richard Supple, Esq. replaced us as Mr. Zappin's counsel in the matter.

10. All of our representation of Mr. Zappin occurred in the State of New York, where the disciplinary action was brought.

11. At no point did we provide representation to Mr. Zappin in the State of West Virginia.

12. The disciplinary matter in which we represented Mr. Zappin concerned only the application of New York ethics rules to Mr. Zappin's conduct during a New York State court litigation that was governed by New York State law.

13. The disciplinary matter in which we represented Mr. Zappin did not involve any conduct in the State of West Virginia.

14. Our  representation  of Mr. Zappin bore no relationship to West Virginia.

15. Scalise & Hamilton LLP and its successor Scalise & Hamilton P.C. have never registered and have never been authorized or licensed to conduct business in West Virginia.

16. Scalise & Hamilton LLP and its successor Scalise & Hamilton P.C. have never maintained any office, place of business, post office box, or telephone listing in West Virginia and, in fact, are exclusively in the State of New York.

17. Scalise & Hamilton LLP and its successor Scalise & Hamilton P.C. have no real estate, bank accounts or other property interest in West Virginia and have not conducted any regular or ongoing advertising, soliciting, marketing or other sales promotions directed towards residents of West Virginia; and have not been registered as agents for service of process in West Virginia.

18. Scalise & Hamilton LLP and its successor Scalise & Hamilton P.C. are incorporated in the State of New York with their principle place of business in the State of New York.

19. Scalise & Hamilton LLP and its successor Scalise & Hamilton P.C. are not engaged in any business activities in West Virginia, are not registered to do business in West Virginia, and do not own property or maintain a place of business in West Virginia.

20. Scalise & Hamilton LLP and its successor Scalise & Hamilton P.C. do not have any employees, agents, or independent contractors in West Virginia.

21. I was regularly at my office in New York working almost every day since April of 2020 and did not receive any request at any time before October 6, 2020, to accept service of the Complaint and/or Summons in this matter.

Further, Affiant sayeth naught.

_____
DEBORAH A. SCALISE

STATE OF NEW YORK
COUNTY OF WESTCHESTER, TO-WIT:

Taken, subscribed, and sworn to before me, a notary public, in and for the county and state aforesaid, by Deborah Scalise, on this 23rd day of October 2020.

_____
Notary Public

My Commission Expires: 7/2023 .

OFFICIAL SEAL:

LISA M. BLUESTEIN
Notary Public, State of New York
No. 02BL4952946
Qualified in Westchester County
Commission Expires July 3, 2023

# EXHIBIT 2

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

ANTHONY ZAPPIN,

     Plaintiff,

v.                                      Case No. 3:20-cv-00209

SARAH JO HAMILTON,
DEBORAH SCALISE,
SCALISE & HAMILTON LLP,
SCALISE & HAMILTON P.C.                        JURY TRIAL DEMANDED

     Defendants.

### AFFIDAVIT OF SARAH JO HAMILTON

STATE OF NEW YORK
COUNTY OF SULLIVAN, TO-WIT:

     I, Sarah Jo Hamilton, being first duly sworn state and affirm as follows:

1. I am over the age of 18 and have personal knowledge of the facts stated in this affidavit and believe the same to be true and correct.

2. I am a citizen and permanent resident of the State of New York.

3. I am a New York attorney and am licensed to practice law in the State of New York.

4. I am not licensed to practice in the state of West Virginia and have never practiced in the state of West Virginia, including making an application for admission *Pro Hac Vice*.

5. At all relevant times I have practiced with the firm of Scalise & Hamilton, known as Scalise & Hamilton LLP and/or its successor, Scalise & Hamilton P.C.

6. From August 1, 2007 to present, I have been a partner with Scalise & Hamilton LLP and/or Of Counsel to its successor, Scalise & Hamilton P.C.

7. On January 19, 2016, Deborah A. Scalise and I, along with our firm Scalise & Hamilton LLP undertook to represent Anthony Zappin in a disciplinary matter brought against him by the Attorney Grievance Committee for the First Judicial Department in the State of New York.

1

8. When we undertook representation of Mr. Zappin, he filled out and signed a Scalise & Hamilton Client Information form, indicating that he resided in the State of New York at 194 West 10th Street, Apt. D1, New York, N.Y. 10014.

9. Ten months later, on October 7, 2016, we withdrew from representing Mr. Zappin in the disciplinary matter as J. Richard Supple, Esq. replaced us as Mr. Zappin's counsel in the matter.

10. All of our representation of Mr. Zappin occurred in the State of New York, where the disciplinary action was brought.

11. At no point did we provide representation to Mr. Zappin in the State of West Virginia.

12. The disciplinary matter in which we represented Mr. Zappin concerned only the application of New York ethics rules to Mr. Zappin's conduct during a New York State court litigation that was governed by New York State law.

13. The disciplinary matter in which we represented Mr. Zappin did not involve any conduct in the State of West Virginia.

14. The representation of Mr. Zappin bore no relationship to West Virginia at all.

15. Scalise & Hamilton LLP and its successor Scalise & Hamilton P.C. have never registered and have never been authorized or licensed to conduct business in West Virginia.

16. Scalise & Hamilton LLP and its successor Scalise & Hamilton P.C. have never maintained any office, place of business, post office box, or telephone listing in West Virginia and, in fact, are exclusively in the State of New York.

17. Scalise & Hamilton LLP and its successor Scalise & Hamilton P.C. have no real estate, bank accounts or other property interest in West Virginia and have not conducted any regular or ongoing advertising, soliciting, marketing or other sales promotions directed towards residents of West Virginia; and have not been registered as agents for service of process in West Virginia.

18. Scalise & Hamilton LLP and its successor Scalise & Hamilton P.C. are incorporated in the State of New York with their principle place of business in the State of New York.

19. Scalise & Hamilton LLP and its successor Scalise & Hamilton P.C. are not engaged in any business activities in West Virginia, are not registered to do business in West Virginia, and do not own property or maintain a place of business in West Virginia.

20. Scalise & Hamilton LLP and its successor Scalise & Hamilton P.C. do not have any employees, agents, or independent contractors in West Virginia.

21. I did not receive any request at any time before October 6, 2020, to accept service of the Complaint and/or Summons in this matter.

Further, Affiant sayeth naught.

Sarah Jo Hamilton
SARAH JO HAMILTON

STATE OF NEW YORK
COUNTY OF   ORANGE         , TO-WIT:

Taken, subscribed, and sworn to before me, a notary public, in and for the county and state aforesaid, by Sarah Jo Hamilton, on this 23rd day of October 2020.

Brenda J. Miller
Notary Public

My Commission Expires: August 24, 2022.

OFFICIAL SEAL:
            BRENDA J. MILLER
      Notary Public, State of New York
        Commission No. 02MI5000830
          Qualified in Orange County
      Commission Expires August 24 2022

3