IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**ANTHONY ZAPPIN,**

      **Plaintiff,**

v.                                             Case No.:  3:20-cv-00209

**SARAH JO HAMILTION;**
**DEBORAH SCALISE;**
**SCALISE & HAMILTON LLP;**
**SCALISE & HAMILTON P.C.;**

      **Defendants.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

Pending before the Court are Plaintiff Anthony Zappin's *pro se* Complaint, (ECF No. 2); Defendants' Motion to Dismiss Plaintiff's Case, Strike Service, and In the Alternative Strike Scandalous Material (ECF No. 15); and Zappin's Motion for Limited Discovery (ECF No. 19). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order, is referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). The undersigned has thoroughly reviewed the materials supplied by the parties. For the reasons that follow, the undersigned respectfully **RECOMMENDS** that Defendants' Motion to Dismiss, (ECF No. 15), be **GRANTED**; Zappin's Motion for Limited Discovery, (ECF No. 19), be **DENIED**, and the Complaint, (ECF No. 2), be **DISMISSED,** without prejudice, and that this action be removed from the docket of the court.

1

## I. Factual and Procedural History

### A. *Complaint and Defendants' Motion to Dismiss*

On March 23, 2020, Zappin filed the instant action seeking damages from his former attorneys and their law firm ("Defendants") for legal malpractice and breach of contract. (ECF No. 2). According to Zappin, Defendants' representation of him during two investigations by the New York Attorney Grievance Committee ("NYAGC") was deficient, *inter alia*, because Defendants failed to file a motion to stay one of Zappin's disciplinary proceedings pending the outcome of his separate child custody suit, (*Id.* at 29), did not adopt his preferred litigation strategy, and did not advance specific arguments. (*Id.* at 30–34). He further asserts that one of the Defendants, Sarah Jo Hamilton, withdrew from his representation and falsely claimed that she was moving out of state, causing him to incur expenses securing new counsel. (*Id.* at 35). Zappin also alleges that Hamilton maintained a personal friendship with an attorney involved in his child custody suit, and that Hamilton "deliberately failed to diligently represent" him in his disciplinary proceeding for the benefit of her friend. (*Id.*). He argues that this negligent representation caused him harm in that he lost of his license to practice law in New York, triggering an investigation leading to the loss of his District of Columbia license as well, and jeopardizing his West Virginia license, pursuant to which disciplinary proceedings are apparently still pending. (*Id.* at 36). He asks the Court to award him damages as well as fees and costs associated with the litigation. (*Id.* at 38).

Zappin failed to effect timely service of process within the ninety-day time limit allowed under Fed. R. Civ. P. 4(m). On September 10, 2020, the undersigned entered an order directing Zappin to show good for his failure to comply with the deadline. (ECF No. 11). On September 30, 2020, Zappin filed his response, citing to his difficulty finding an

affordable process server in New York due to COVID-19. (ECF No. 12). The undersigned accepted Zappin's explanation and allowed him until October 8, 2020 to serve process on Defendants. (ECF No. 13).

On October 26, 2020, Defendants filed a motion to dismiss Zappin's Complaint, or alternatively to strike scandalous material from it, and submitted a memorandum of law in support of their position. (ECF Nos. 15, 16). Defendants argue that the Complaint should be dismissed because this Court lacks personal jurisdiction over them. (ECF No. 16 at 3). They first assert that there is no general personal jurisdiction over them in West Virginia because they are not "at home" in this State. (*Id.* at 5) (internal quotation marks omitted). They assert that they do not generally engage in business in West Virginia and are not registered to do so, and do not own property or practice law in the State. (*Id.*). They further assert that they are not subject to specific personal jurisdiction in West Virginia because they have not "purposefully availed" themselves of the privilege of doing business in the State, and the complaint does not contain allegations of conduct that connect Defendants to West Virginia. (*Id.* at 7) (internal quotation marks omitted). Defendants allege that "[a]ll facts relevant to this action occurred in the State of New York." (*Id.*). They point out that the disciplinary action, as well as Zappin's divorce and child custody suits, all took place in New York and were governed by New York law, and maintain that Zappin's residence in West Virginia does not form a sufficient basis for this Court's jurisdiction under the Due Process Clause. (*Id.* at 7).

Defendants further allege that the Complaint should be dismissed because Zappin failed to timely serve process and did not show good cause for his failure to do so. (*Id.* at 8). They contend that the excuses proffered by Zappin for the delay are "tantamount to a sham" because Zappin had made no attempt to have them served, did not seek an order

3

from the Court to extend his time to serve process, and did not take advantage of a New York's procedural rule which allows service of process via first class mail at relatively little cost. (*Id.* at 11–12). Defendants also argue that if the Complaint is not dismissed, that some paragraphs contained therein should be stricken. (*Id.* at 12). According to Defendants, Zappin's Complaint includes a number of irrelevant paragraphs, such as an extensive description of his divorce and child custody litigation, as well as unfounded claims of corruption, mafia ties, violence, criminal conduct, plots by many individuals to destroy his legal career, and "claims of intimidation and deceit by Defendants." (*Id.* at 13). They allege that these descriptions are "not relevant" to Zappin's claims and "do not relate in any way to Defendants' conduct" in providing legal representation to Zappin. (*Id.* at 15). Defendants also contend that paragraphs in the Complaint which accuse specific judicial officers of corruption and misconduct, and make other claims about Defendants' own alleged activities representing him, are scandalous, and the inclusion of such paragraphs would be prejudicial. (*Id.* at 17–18).

On December 4, 2020, Zappin filed a memorandum in opposition to the Defendants' Motion to Dismiss. (ECF No. 22). He argues that this Court has specific personal jurisdiction over Defendants' in this matter because Defendants' attempted to collect outstanding legal fees by sending bills to him in West Virginia, (*Id.* at 4), agreed to represent him while he was a permanent West Virginia resident, (*Id.* at 6), and knew that the outcome of the NYAGC disciplinary investigation could impact his West Virginia law license, (*Id.* at 10), and because the disciplinary investigation concerned some of his behavior in West Virginia. (*Id.* at 12). He rejects Defendants' position that they were untimely served process because this Court's order extended the deadline for service, insisting that the Court's order is now the "law of the case" and he fully complied with the

4

extended deadline. (*Id.* at 14). Finally, he defends the inclusion of paragraphs from his Complaint alleging unethical behavior on the part of New York judicial officers, asserting that they are "plainly relevant to the issue of whether Defendants committed malpractice." (*Id.* at 16). Zappin reasons that these paragraphs demonstrate that Defendants were deficient by failing to raise the allegations during their representation. (*Id.* at 17). Separately, Zappin filed a Declaration with five attached exhibits in support of his point that Defendants billed him for legal services at his home in West Virginia and knew their representation could affect his West Virginia law license. (ECF No. 23).

On December 14, 2020, Defendants replied to Zappin's response. (ECF No. 25). Defendants emphasize that the line of cases cited by Zappin in support of the notion that billing him at his West Virginia address creates minimum contacts sufficient to establish personal jurisdiction all concerned unfair debt collection practices, and do not apply in this legal malpractice action. (*Id.* at 3–4). While they deny the extent of their communications as described by Zappin, Defendants maintain that even if they had communicated frequently with Zappin in West Virginia, such contacts would not allow this Court to take personal jurisdiction over the case. (*Id.* at 4–5). They further assert that any negative effects felt in West Virginia from the disciplinary proceedings in New York do not satisfy the test set forth by the Fourth Circuit Court of Appeals ("Fourth Circuit") to assess this Court's jurisdiction over nonresident defendants. (*Id.* at 6–8). With respect to the service of process issue, Defendants contend that Zappin did not disclose "key facts that when brought to light establish his excuses [for not serving process] lacked merit" and urge this Court not to apply the law of the case doctrine. (*Id.* at 9–10). Defendants reiterate their opposition to certain paragraphs in the Complaint which disparage the reputation and integrity of judicial officers in New York. (*Id.* at 10–11).

### B. *Motion for Limited Discovery on the Issue of Personal Jurisdiction*

On November 30, 2020, Zappin filed a Motion for Limited Discovery on the Issue of Personal Jurisdiction, as well as a memorandum of law in support. (ECF Nos. 19, 20). In his Motion, Zappin repeats his assertion that Defendants sent invoices for legal services to two addresses in West Virginia, which can be confirmed by his family members. (ECF No. 20 at 4). He asks the Court to require Defendants to produce billing invoices sent to him in West Virginia before ruling on the issue of personal jurisdiction. (*Id.* at 5).

Defendants responded to the Motion on December 9, 2020. (ECF No. 24). They dispute Zappin's claim that billing Zappin in West Virginia established contacts in the State which support this Court's jurisdiction. (*Id.* at 5). Defendants reiterate their position that contacting Zappin in West Virginia was merely incidental to their representation of him in his disciplinary matters in New York. (*Id.* at 8). They urge the Court to deny Zappin's motion because the invoices are not relevant to the issue of personal jurisdiction. (*Id.* at 9). Zappin made no timely reply to Defendants' response to his Motion.

**II.    Standard of Review**

Under Rule 12(b)(2), a defendant may seek dismissal of an action on the basis that the court lacks personal jurisdiction over the defendant. "[T]he plaintiff ultimately bears the burden of proving to the district court judge the existence of jurisdiction over the defendant by a preponderance of the evidence." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005) (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). In general, to establish personal jurisdiction, the plaintiff must properly serve a summons on, or file a waiver of service returned by, a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A).

In deciding a motion under Rule 12(b)(2), the court may conduct an evidentiary hearing to resolve disputed facts, or may decide the matter based on the pleadings, motion papers, and supporting memoranda. *Combs*, 886 F.2d at 676. If the latter option is used, the court must "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id*. The plaintiff need only make a "prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Id*.

This Court is required to liberally construe *pro se* complaints, such as the one filed in this civil action. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the complaint still must contain sufficient factual allegations to support a valid legal cause of action. The court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), develop the plaintiff's legal theories for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. Discussion

#### A. *Personal Jurisdiction*

Defendants move to dismiss this case on the basis of the Court's lack of personal jurisdiction over them. Inquiry into personal jurisdiction is not a mere formality; it goes to the heart of this Court's power to exert authority pursuant to the Constitution. Individuals have a liberty interest in "not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471–72 (1985) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). The Due Process Clause of the Fourteenth

7

Amendment to the United States Constitution protects this interest and prevents federal courts from exerting jurisdiction over parties who do not have "minimum contacts" with the forum state and do not consent to the forum Court's jurisdiction. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). For the Court to take jurisdiction over a nonresident party, the party must have taken some action to "purposefully avail[] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475 (internal quotation marks omitted); *see also Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553 (4th Cir. 2014) (providing a three-part test and several "flexible" factors for determining jurisdiction). Further, the plaintiff must show that the cause of action "arises out of" the defendant's conduct directed toward the forum state. *Burger King*, 471 U.S. at 462. *See also In re Celotex Corp.*, 124 F.3d 619, 627–28 (4th Cir. 1997).

This is a suit for legal malpractice and breach of contract. Defendants are all citizens of New York and Zappin is a citizen of West Virginia. Zappin insists that Defendants have established minimum contacts with West Virginia based on four theories: 1. Defendants contacted him and mailed billing invoices to him in West Virginia; 2. Defendants agreed to represent him in a disciplinary action after he became a permanent resident of West Virginia; 3. Defendants knew that the outcome of the New York disciplinary proceedings could affect Zappin's West Virginia law license; and 4. the underlying disciplinary investigation, in part, concerned allegations about Zappin's behavior in West Virginia. (ECF No. 22 at 4, 6, 10, 12). However, even accepting Zappin's factual contentions as true, the Defendants' conduct does not establish minimum contacts sufficient to allow this Court to take personal jurisdiction over them. The undersigned will address each theory briefly.

### 1. Bills Addressed to Zappin's West Virginia Addresses

Zappin maintains that he received bills from Defendants at both his personal address and his "business address" in Huntington. (ECF No. 22 at 4). Defendants do not deny that they communicated with Zappin while he was in West Virginia, but stress that such communication was "merely incidental" to their representation of him in New York, and such communication does not signify that they "purposely availed" themselves of West Virginia's laws. (ECF No. 25 at 5). Defendants are absolutely correct. Sending bills for legal representation rendered in New York to Zappin in West Virginia does not create minimum contacts with the State sufficient to justify this Court's jurisdiction in this matter. Zappin's provides multiple citations to cases in which defendants were subject to jurisdiction in the forum state when they sent bills or debt collection notices to the forum state. (ECF No. 22 at 5). However, as noted by Defendants, virtually all of the cited cases concern allegations of unfair debt collection practices. In those cases, the plaintiffs' claims of unfair debt collection "arose out of" the defendant debt collectors' activities. *Universal Leather*, 773 F.3d at 559 (discussing the three-part test for personal jurisdiction) (internal punctuation omitted). In contrast, Zappin's claims did not arise out of Defendants' debt collection activity; the subject of the instant litigation is Defendants' legal representation of Zappin, which took place entirely in New York and in a New York tribunal applying New York law. That Defendants sent bills to Zappin in West Virginia is irrelevant to this Court's jurisdictional inquiry. Due process protections would be paltry indeed if all it took for defendant law firms to "purposefully avail" themselves in a forum state was a client changing their contact information to an address in the forum. *See Cmty. Tr. Bank, Inc. v. Severson*, No. CIV. A. 3:14-7168, 2014 WL 3700482, at \*5 (S.D.W. Va. July 17, 2014) ("The relevant inquiry is what action Defendant himself took to purposely avail himself

of the privileges of conducting activities in West Virginia.").

Zappin suggests that because legal malpractice would be a compulsory counterclaim if he were sued for failure to pay his outstanding legal bills, it is "only reasonable" that he "defend against Defendants' collection attempts by filing suit in West Virginia alleging malpractice." (ECF No. 22 at 6). Certainly, if Zappin were being sued for outstanding legal bills in this Court he could counterclaim for malpractice, but that situation involves a wholly different procedural posture than what is involved here. In such a hypothetical scenario, Zappin's former attorneys would have *consented* to personal jurisdiction in this Court by filing suit. That logic does not apply where Zappin is unilaterally attempting to hale Defendants' into court in a judicial district with which they have contact only incidentally because of Zappin's presence here. Accordingly, the undersigned **FINDS** that sending bills to Zappin in West Virginia does not constitute purposeful availment of West Virginia law sufficient to establish personal jurisdiction in this Court.

### 2. Defendants' Representation of Zappin Following His Relocation to West Virginia

Zappin contends that Defendants entered into a contract to represent him in a New York disciplinary matter after he had already moved to West Virginia, thus "personally availing themselves" to West Virginia because such a contract "ethically required" Defendants to consult with him while he lived in the State. (ECF No. 22 at 9). This argument lacks merit. While Zappin attempts to characterize Defendants' obligation to communicate with him throughout his representation as sufficient to establish jurisdiction, as already explained, such communication does not constitute purposeful availment of the laws of West Virginia. Though Zappin takes great pains to point out that

the NYAGC disciplinary proceeding at issue was "entirely separate and did not overlap in any way with the prior" disciplinary proceeding for which he retained Defendants, it is obvious from context that this proceeding concerned the same behavior and challenge to Zappin's law license as the original charge. However, even if the matter had concerned an entirely distinct set of events, it is equally clear that communication with a person in West Virginia to discuss legal representation taking place in New York does not constitute minimum contacts with the State of West Virginia. As discussed above, none of the purportedly tortious activity of Defendants took place in West Virginia; accordingly, the undersigned **FINDS** that Defendants' representation of Zappin after his relocation does not support a finding of jurisdiction here.

### 3. Negative Effects in West Virginia

Zappin reasons that because the outcome of the NYAGC's disciplinary proceedings implied consequences for his West Virginia law license, Defendants are subject to jurisdiction in this State. (ECF No. 22 at 10). This is incorrect. As Defendants note, the Fourth Circuit's test for determining whether negative effects felt in the forum state due to the conduct of nonresidents constitute minimum contacts in the forum is found in *Consulting Engineers Corp. v. Geometric Ltd.. See* 561 F.3d 273, 280 (4th Cir. 2009). This test requires Zappin to show that Defendants committed an intentional tort and that he felt the brunt of the harm in West Virginia and that Defendants "expressly aimed [their] tortious conduct at" West Virginia. *Id.* In this case, Zappin is suing for legal malpractice and breach of contract; neither cause of action is an intentional tort. Furthermore, it is clear that the reciprocal disciplinary action in West Virginia contemplated by Zappin and his attorneys, (ECF No. 22 at 11), was not the express aim of Defendants in their representation of Zappin. Zappin hired Defendants to represent him

11

before a New York tribunal on New York disciplinary charges, and the fact that the outcome of the proceeding could trigger events elsewhere does not constitute purposeful availment of another state's laws. Zappin asserts that his attorney advised him of the importance of preserving his New York law license in order to protect his license in West Virginia. (ECF No. 22 at 11). But thinking and talking about West Virginia is not equivalent to establishing minimum contacts in West Virginia. The undersigned **FINDS** that the incidental harm to Zappin's West Virginia law license following his NYAGC disciplinary proceedings does not provide a basis for this Court to assert personal jurisdiction over Defendants.

### 4. Zappin's West Virginia Activities Relevant to NYAGC Proceeding

Finally, Zappin claims that because the NYAGC's investigation concerned some of his behavior in West Virginia, and Sarah Jo Hamilton interviewed witnesses in West Virginia about this behavior, jurisdiction is proper here. (ECF No. 22 at 12). However, this Court cannot reach such a conclusion. Personal jurisdiction concerns the *defendant's* contact with the forum state, not the plaintiff's. The extent of Zappin's contact with West Virginia and his behavior in the State is not relevant to the issue of this Court's jurisdiction over Defendants. Moreover, the extent of such contact is *de minimis*. Zappin alleges only that Sarah Jo Hamilton called his father, Jeffrey Zappin, to ask about a website Jeffrey apparently created to disparage an attorney involved in Zappin's child custody suit in preparation for Zappin's deposition before the NYAGC in 2016. (ECF No. 22 at 13). As fully explained above, contacting a West Virginia resident is not the same as establishing minimum contacts in the State. Zappin admits that the focus of the NYAGC's disciplinary proceedings concerned his New York behavior, but even if there had been a greater

emphasis on his West Virginia misdeeds in the investigation, Defendants cannot be said to have established minimum contacts in this State based on Zappin's unilateral behavior. Accordingly, the undersigned **FINDS** that Zappin's West Virginia activities do not allow a finding of jurisdiction over Defendants.

### *B. Zappin's Motion for Limited Discovery on the Issue of Personal Jurisdiction*

Zappin filed a Motion for Limited Discovery in order to support his contention that this Court has personal jurisdiction over Defendants. (ECF No. 19). As thoroughly explained above, the documentation sought by Zappin in his Motion for Limited Discovery—namely, copies of the letters and bills sent to him throughout Defendants' representation and the corresponding addresses—would not aid him in establishing this Court's jurisdiction over Defendants in this action. Even accepting fully Zappin's factual allegations, Defendants' billing of Zappin in West Virginia does not establish minimum contacts in the State sufficient to comply with due process under the Fourteenth Amendment. Therefore, the undersigned **FINDS** that the motion should be denied.

### *C. Defendant's Motion to Dismiss for Insufficient Service of Process and Alternative Motion to Strike Scandalous Material*

Defendants included in their Motion to Dismiss a Motion to Dismiss for Insufficient Service of Process and an alternative remedy requesting this Court to strike scandalous material from Zappin's Complaint. (ECF No. 15). Because this Court lacks authority to assume personal jurisdiction over Defendants in this matter, Defendants' alternative grounds for relief are accordingly moot.

### IV. Proposal and Recommendations

For the reasons set forth above, the undersigned **RECOMMENDS** that Defendants' Motion to Dismiss, (ECF No. 15), be **GRANTED**; Zappin's Motion for

13

Limited Discovery, (ECF No. 19), be **DENIED**, and that the Complaint, (ECF No. 2), be **DISMISSED**, with prejudice, and that this action be removed from the docket of the court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiffs and counsel of record.

**FILED:** January 14, 2021

Cheryl A. Eifert
United States Magistrate Judge